IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 18-135-BLG-SPW-TJC-1 |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| SADIE ALLEN HACKETT, | |
| Defendant. | |

Defendant Sadie Allen Hackett ("Hackett") is charged with conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 1.) She has moved to suppress evidence under the Fourth Amendment. (Doc. 41.)

On April 16, 2019, U.S. District Judge Susan P. Watters referred Hackett's motion to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 59(a), Fed. R. Crim. P., to conduct a hearing and issue appropriate findings and recommendations. (Doc. 44.)

Hackett was a passenger in a vehicle which was stopped and searched by law enforcement. She asserts that evidence and testimony concerning firearms, methamphetamine, and cash obtained from the search and subsequent investigation

1

into the vehicle should be suppressed.  She contends the evidence was obtained

from an unlawful traffic stop.  She argues the traffic stop was not supported by

reasonable suspicion because the officer's justifications for the stop were

unreasonable and based on a mistake of law.

The Court held an evidentiary hearing on May, 21, 2019, and the parties

presented evidence on the motion.  Having considered the parties' arguments and

submissions, the Court **RECOMMENDS** that Hackett's Motion to Suppress be

**DENIED**.

## I.    BACKGROUND

The Court heard testimony from Billings Police Department Officer

Jeremiah Adams ("Officer Adams").  The following facts are taken from the

hearing testimony and the parties' briefs.

On July 25, 2018, Officer Adams conducted a traffic stop of a blue Subaru

Impreza because he believed the driver's visibility was impaired by a crack in the

vehicle's front windshield.  (Tr. 6 & Docs. 42 at 3; 48 at 2.)  He testified he first

observed the cracked windshield when the vehicle made a right turn while he was

traveling a few cars behind the vehicle.  (Tr. 10, 16.)  Officer Adams then moved

directly behind the vehicle and initiated the traffic stop.  (Tr. 16; Exhibit D.)

Officer Adams testified he was also concerned that items hanging from the

vehicle's rear-view mirror were impeding the driver's visibility.  (Tr. 6.)  Officer

Adams explained, however, that he would have stopped the vehicle regardless of whether there were items hanging from the mirror, because the crack alone sufficiently concerned him that the driver's visibility was impaired. (Tr. 6-7, 13.) He also testified that he regularly conducts traffic stops of vehicles with windshield cracks appearing to obstruct the driver's view of the road. (Tr. 7.)

Officer Adams described the crack as running horizontally across the entirety of the windshield, above the steering wheel, and directly in the driver's view. (Tr. 6, 17.) He testified the windshield was neither shattered nor cracked in a spider-web pattern. (Tr. 13.) Nevertheless, he believed the crack materially impaired or obstructed the driver's view. (Tr. 15.) Officer Adams testified he further observed the crack upon stopping the vehicle; he indicated the windshield's condition is accurately represented in the photographs marked as Exhibits A, B, and C.[1] (Tr. 13.)

After Officer Adams initiated the traffic stop, he approached the vehicle and made contact with the driver, Johnny Bieshuevel, and the passenger, Sadie Hackett. (Doc. 42 at 3.) The traffic stop eventually led to the seizure and search of the vehicle and the discovery of methamphetamine, firearms, and cash. (Doc. 42 at

---

[1] The Court admitted Exhibits A, B, C, and a dashboard video of the traffic stop, marked Exhibit D, at the hearing. (Tr. 12.) The Exhibits are filed under Doc. 52 in the Court docket. Exhibits A, B, and C depict a crack running horizontally across the entirety of the vehicle's windshield.

4.)  Additionally, on October 18, 2018, ATF agents conducted an interview with

Bieshuevel regarding the traffic stop.  (Doc. 42 at 5.)  During the interview,

Bieshuevel made statements to the agents concerning the contents of the vehicle at

the time of the stop.  *Id.*  Hackett seeks suppression of the evidence obtained as a

result of the traffic stop, including the methamphetamine, firearms, cash, and

statements made to law enforcement by Bieshuevel concerning these items.

## II.      DISCUSSION

Under Mont. Code Ann. § 61-9-405(2)(b), a person may not drive a motor

vehicle in Montana with "a windshield that is shattered or in such a defective

condition that it materially impairs or obstructs the driver's clear view."

Hackett argues Officer Adams did not have reasonable suspicion to conduct

the traffic stop because the windshield was not in a condition that could reasonably

be said to materially obstruct the driver's view.[2]  Therefore, she argues the

evidence and testimony obtained as a result of the search should be suppressed.

The Government contends the stop was lawful because Officer Adams had

---

[2] In her brief in support of her motion to suppress, Hackett also argued that to the
extent Officer Adams' traffic stop was based on a large item hanging from the
rearview mirror, his rationale was a mistake of law and could not form the basis for
reasonable suspicion to conduct a traffic stop.  Officer Adams testified his reason
for making the traffic stop was the cracked windshield (Tr. 6-7, 13-14), and the
mistake of law issue was not addressed at the hearing by the parties.  Since the
Court finds reasonable suspicion to conduct the stop based upon the cracked
windshield alone, resolution of this secondary issue is unnecessary.

reasonable suspicion to believe the vehicle was in violation of Mont. Code Ann. §

61-9-405, and therefore the evidence and statements obtained from the subsequent

search and investigation should not be suppressed.

The Fourth Amendment protects persons against unreasonable searches and

seizures.  U.S. Const. Amend. IV.  To invoke the Fourth Amendment's protections,

an individual must have a "legitimate expectation of privacy in the invaded place."

*Minnesota v. Olson*, 495 U.S. 91, 95 (1990).  Generally, "a passenger with no

possessory interest" in a vehicle "has no reasonable expectation of privacy in [the]

car that would permit [her] Fourth Amendment challenge to search of the car."

*United States v. Springfield*, 2016 WL 1060224 (D. Mont. 2016) (quoting *United*

*States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005)).  The passenger of a vehicle

may have a reasonable expectation of privacy in the contents of the vehicle if she

can establish a possessory interest in the driver's car.[3]  *Pulliam*, 405 F.3d at 786

(citing *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978)).

A traffic stop constitutes a "seizure" within the meaning of the Fourth

Amendment and is permissible when supported by reasonable suspicion.  *Wren v.*

*United States*, 517 U.S. 806, 809-10 (1996).  "Reasonable suspicion exists when an

---

[3] Hackett has not asserted a possessory interest in the vehicle or any of its contents.
The United States has not challenged Hackett's standing, however, nor has this
issue been briefed.  Regardless, the Court finds that Officer Adams had reasonable
suspicion to conduct the traffic stop.

officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).  "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006).  The "mission" of a traffic stop includes "determining whether to issue a traffic ticket . . . [.]" *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015).  "A statutory violation alone is sufficient to establish particularized suspicion for an officer to make a traffic stop." *State v. Schulke*, 109 P.3d 744, 747 (Mont. 2005).  Additionally, "if the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice." *Miranda-Guerena*, 445 F.3d at 1236.

Here, Officer Adams testified he observed a crack in the vehicle's windshield that appeared to materially obstruct the drivers view.  (Tr. 15.)  He described the crack as horizontally extending the entire length of the windshield, above the steering wheel, and directly within the driver's field of vision.  (Tr. 6, 17.)  The Exhibits admitted in this case support his observations.  (Doc. 52.)

These facts provided Officer Adams with reasonable suspicion to conduct a traffic stop to investigate and determine whether the condition of Bieshuevel's windshield was in violation of Mont. Code Ann. § 61-9-405(2)(b).  Officer Adams'

6

observations constitute "specific, articulable facts" which formed "a basis for

particularized suspicion" that a traffic violation was occurring.  Officer Adams was

not required to have probable cause to believe the statute was violated.  "The

reasonable-suspicion standard is not a particularly high threshold to reach.

'Although ... a mere hunch is insufficient to justify a stop, the likelihood of

criminal activity need not rise to the level required for probable cause, and it falls

considerably short of satisfying a preponderance of the evidence standard.'" *United*

*States v. Valdes–Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (quoting

*United States v. Arvizu*, 534 U.S. 266, 274 (2002).

 In a similar situation, the Seventh Circuit upheld the constitutionality of a

vehicle stop for a cracked windshield, even though it was ultimately determined

that the condition of the windshield did not violate state law.  In *United States v.*

*Cashman*, 216 F.3d 582, 587 (7th Cir. 2000), the court pointed out that "[t]he

propriety of the traffic stop does not depend . . . on whether [defendant] was

actually guilty of committing a traffic offense by driving a vehicle with an

excessively cracked windshield.  The pertinent question instead is whether it was

reasonable for [the officer] to *believe* that the windshield was cracked to an

impermissible degree."  (Emphasis in original.)

 The Tenth Circuit applied the same standard in *United States v. Callarman*,

273 F.3d 1284 (10th Cir. 2001).  As in this case, a Kansas police officer was

following the defendant's vehicle after he failed to use a turn signal, and he noticed a crack in the car's front windshield while they were stopped at a stoplight.  The defendant's car was pulled over, and contraband was discovered as a result of the stop.  The Kansas windshield statute was similar to the Montana statute, and prohibited driving a motor vehicle with a damaged front windshield "which substantially obstructs the driver's clear view of the highway or any intersecting highway."  *Id.* at 1287.  In seeking to suppress evidence recovered in the stop, the defendant maintained that the traffic stop must be supported by probable cause, and that the cracked windshield and failure to signal did not provide probable cause.

The Tenth Circuit disagreed.  With respect to the cracked windshield, the court pointed out that the windshield had a crack about 12 inches across and 6 inches high, and was large enough that the officer could observe the crack from behind the car.  *Id.* at 1287.  The court found these facts provided the officer "reasonable articulable suspicion – a particularized and objective basis – to believe the crack substantially obstructed [the defendant's] view.  It is irrelevant whether the observed crack was, in fact, large enough to constitute a violation of the law." *Id.*  (Internal quotations and citations omitted.)

In this case, Officer Adams' observation that the windshield was cracked directly within the driver's field of vision and across the entire width of the

windshield, provided him with the reasonable belief that the statute was violated.

Therefore, the Court finds Officer Adams had sufficient facts to form

particularized suspicion that the vehicle's windshield was in violation of § 61-9-

405(2)(b).  Because the facts allowed Officer Adams to reasonably believe there

was a violation, the traffic stop was legal.  *Miranda-Guerena*, 445 F.3d at 1236.

The Court therefore finds the evidence recovered from the subsequent search of the

car should not be suppressed.

## III.   <u>CONCLUSION</u>

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that

Hackett's Motion to Suppress (Doc. 41) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy

of the Findings and Recommendations of United States Magistrate Judge upon the

parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

**IT IS ORDERED**.

DATED this 5th day of June, 2019.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge

9