# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SADIE ALLEN HACKETT,<br><br>Defendant. | CR 18-135-BLG-SPW-1<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATION |

The Defendant, Sadie Hackett, filed a motion to suppress evidence officers obtained through a traffic stop and search of a vehicle she was a passenger in. The Court referred Hackett's motion to United States Magistrate Judge Timothy J. Cavan. Judge Cavan issued findings and a recommendation that the Court deny Hackett's motion. For the following reasons, the Court adopts the findings and recommendation in full and denies Hackett's motion to suppress.

I.  **Background**

Judge Cavan held a hearing on Hackett's motion to suppress and heard testimony from Billings Police Department Officer Jeremiah Adams. Judge Cavan found the following facts from the hearing testimony and the parties' briefs. (Doc. 54 at 2.)

On July 25, 2018, Officer Adams observed a blue Subaru Impreza driving with a cracked windshield while he was travelling a few cars behind the vehicle and it made a right turn. Officer Adams moved directly behind the vehicle and initiated a traffic stop. (Doc. 54 at 2.) He was also concerned an item hanging from the vehicle's rear-view mirror was impairing the driver's clear view, but he testified he would have stopped the vehicle regardless because the windshield crack alone sufficiently concerned him that the driver's clear view was impaired. He further testified he regularly conducts traffic stops and issues citations for vehicles with windshield cracks appearing to obstruct the driver's view of the road. (Doc. 54 at 2–3.)

After initiating the traffic stop, Officer Adams made contact with the driver, Johnny Bieshuevel, and the passenger, Sadie Hackett. Neither Hackett nor the United States elicited testimony from Officer Adams about the exchange he had with Bieshuevel and Hackett after he initiated the traffic stop. Nevertheless, he testified the traffic stop eventually led to the seizure and search of the vehicle for narcotics. (Doc. 54 at 3.)

Officers later uncovered methamphetamine, firearms, and cash in the vehicle. On October 18, 2018, ATF agents conducted an interview with Bieshuevel regarding the traffic stop, and Bieshuevel made statements to them

concerning the vehicle's contents. (Doc. 54 at 3–4.)

## II. Discussion

Under Mont. Code Ann. § 61-9-405(2)(b), a person may not drive a motor vehicle in Montana with "a windshield that is shattered or in such a defective condition that it materially impairs or obstructs the driver's clear view."

In her brief supporting her motion to suppress, Hackett argued Officer Adams's rationale for pulling the vehicle over—the cracked windshield and an item hanging from the rearview mirror[1]—did not constitute reasonable suspicion warranting a traffic stop. Hackett moved the Court to suppress all evidence obtained as a result of the traffic stop and all derivative evidence and testimony from the subsequent ATF investigation. (Doc. 42 at 9–11.) The United States agreed an item hanging from a rearview mirror does not violate Montana law but argued the stop was nonetheless justified because Officer Adams had reasonable suspicion to believe the vehicle was violating § 61-9-405. (Doc. 43 at 4.)

Judge Cavan found Officer Adams's observation that the vehicle's windshield was cracked directly within the driver's field of view and across the entire width of the windshield provided him sufficient facts to form a

---

[1] Because Judge Cavan found Officer Adams had reasonable suspicion to conduct the traffic stop based upon the cracked windshield alone, he found it unnecessary to resolve whether Montana law allowed for a traffic stop based on a large item hanging from a rearview mirror. (Doc. 54 at 4.) The Court agrees and will not address the issue.

particularized suspicion that the windshield violated the statute. (Doc. 54 at 8–9.) Hackett objected to Judge Cavan's finding that particularized suspicion existed to justify the traffic stop. For the first time, Hackett also argued even if this Court found the traffic stop justified, the eventual seizure and search exceeded the scope of the initial justification for the stop. (Doc. 57 at 7–9.)

*A. Officer Adams had a particularized suspicion justifying the traffic stop.*

The Fourth Amendment protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. A brief detention short of traditional arrest (like a traffic stop) constitutes a seizure within the meaning of the Fourth Amendment. An officer may effectuate a traffic stop only if the officer has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . . ." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). An officer must base a traffic stop on more than a mere *hunch*—the Fourth Amendment requires an objective justification for the stop. "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis removed). "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if

particularized suspicion that the windshield violated the statute. (Doc. 54 at 8–9.) Hackett objected to Judge Cavan's finding that particularized suspicion existed to justify the traffic stop. For the first time, Hackett also argued even if this Court found the traffic stop justified, the eventual seizure and search exceeded the scope of the initial justification for the stop. (Doc. 57 at 7–9.)

*A. Officer Adams had a particularized suspicion justifying the traffic stop.*

The Fourth Amendment protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. A brief detention short of traditional arrest (like a traffic stop) constitutes a seizure within the meaning of the Fourth Amendment. An officer may effectuate a traffic stop only if the officer has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . . ." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). An officer must base a traffic stop on more than a mere *hunch*—the Fourth Amendment requires an objective justification for the stop. "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis removed). "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if

particularized suspicion that the windshield violated the statute. (Doc. 54 at 8–9.) Hackett objected to Judge Cavan's finding that particularized suspicion existed to justify the traffic stop. For the first time, Hackett also argued even if this Court found the traffic stop justified, the eventual seizure and search exceeded the scope of the initial justification for the stop. (Doc. 57 at 7–9.)

*A. Officer Adams had a particularized suspicion justifying the traffic stop.*

The Fourth Amendment protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. A brief detention short of traditional arrest (like a traffic stop) constitutes a seizure within the meaning of the Fourth Amendment. An officer may effectuate a traffic stop only if the officer has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . . ." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). An officer must base a traffic stop on more than a mere *hunch*—the Fourth Amendment requires an objective justification for the stop. "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis removed). "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if

the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006). The "mission" of a traffic stop includes "determining whether to issue a traffic ticket . . . ." *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015).

Judge Cavan aptly points to Seventh and Tenth Circuit Courts of Appeals cases involving similar facts to those at hand. In both cases, officers pulled over the defendant after observing the defendant driving a vehicle with a cracked windshield. Both courts explained the pertinent question was not whether the defendant's damaged windshield violated the statute; the pertinent question was whether the objective facts provided the officer with a reasonable suspicion the damaged windshield violated the statute. *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001); *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000). Given the present situation, *Callarman* is especially informative: there, the windshield crack was large enough for the officer to observe it from behind the defendant's vehicle, and the court held,

> This gave [the officer] reasonable articulable suspicion—a particularized and objective basis—to believe that the crack substantially obstructed [the driver's] view of the street. It is irrelevant whether the observed crack was, in fact, large enough to constitute a violation of the law. The traffic stop was therefore justified . . . .

*Callarman*, 273 F.3d at 1287 (internal quotations and citations omitted).

From the distance of two vehicles behind the defendant, Officer Adams observed Bieshuevel's Subaru Impreza had a cracked windshield. Exhibits A-C (photographs of the cracked windshield) verify Officer Adams's observation that the crack ran horizontally across the width of the windshield, directly within the driver's field of vision. These observations provided Officer Adams with articulable facts—an "objective manifestation that the person stopped [was], or [was] about to be, engaged in criminal activity"—necessary to initiate the traffic stop. *See United States v. Cortez*, 449 U.S. 411, 417 (1981). Whether the crack in Bieshuevel's windshield actually violated § 61–9–405(2)(b) is irrelevant: the objective facts provided Officer Adams with a reasonable suspicion the damaged windshield violated the statute. The Court concludes the stop was justified.

> *B. Hackett waived her argument that the seizure and search of the vehicle exceeded the scope of the justification for the traffic stop.*

Hackett next argues even if the traffic stop was initially justified, the Court must still suppress the evidence because the scope of the search and seizure exceeded the initial justification for the stop. (Doc. 57 at 9.) Hackett, however, never raised this argument before Judge Cavan.

"'A district court has discretion, but is not required, to consider evidence

presented for the first time in a party's objection to a magistrate judge's recommendation,' but it 'must actually exercise its discretion, rather than summarily accepting or denying the motion.'" *Friends of the Wild Swan v. Weber*, 955 F. Supp. 2d 1191, 1194 (D. Mont. 2013), *aff'd*, 767 F.3d 936 (9th Cir. 2014) (quoting *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir.2000)). "A district court is well within its discretion in barring arguments raised for the first time on objections to a magistrate's findings and recommendations absent exceptional circumstances." *Id.* (citing *Greenhow v. Sec. of Health & Human Services*, 863 F.2d 633, 638–39 (9th Cir. 1988), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992)).

Hackett provides no reason for failing to raise her argument in her motion to suppress—let alone exceptional circumstances. Notably, Hackett had the opportunity to elicit testimony from Officer Adams and present evidence about whether the search and seizure exceeded the scope of the traffic stop, but she did not. "[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act." *Greenhow*, 863 F.2d at 638. "[T]he Magistrates Act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district

court." *Id.*

In her brief in support of her motion to suppress, Hackett provided a detailed outline of the series of events between the traffic stop and the seizure and search of the vehicle. The facts and evidence supporting Hackett's argument were available to her when she filed her motion to suppress and when Judge Cavan held the hearing on the motion. The Court declines to provide Hackett an opportunity to present a new argument after her initial argument in front of Judge Cavan proved unsuccessful. Therefore, the Court exercises its discretion and will not address the merits of Hackett's argument.

### III. Conclusion

Officer Adams had a reasonable suspicion justifying a traffic stop of the vehicle Hackett occupied. The Court will not address the merits of Hackett's second argument because she failed to raise it before Judge Cavan. Accordingly,

IT IS HEARBY ORDERED:

1. The Court adopts Judge Cavan's Findings and Recommendation in full.

2. Hackett's Motion to Suppress is DENIED.

DATED this 2nd day of July, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE